No. 2,026.

WILLIAM H. BROWN, RESPONDENT, v. WILLIAM F. McALLISTER et al.,
APPELLANTS.

INSTRUCTIONS TO JURY, CONTRADICTORY AND REPUGNANT.—Where the instructions of the Court, on a material point, are contradictory and repugnant, the judgment will be reversed.

NUISANCE.—Where a person has no control over the property lying on a declivity above and adjoining his lot, nor over the persons who occupy it, and without any fault of his, offensive water thrown upon the upper lot flows naturally across his premises, on to a lot lying below, he is not amenable to the owner of such lower lot, for the damage which ensues.

APPEAL from the District Court of the Twelfth District, City and County of San Francisco.

The facts are stated in the opinion.

*McAllisters & Bergin,* for Appellants.

*First*—The measure of care and responsibility prescribed to the owner, by the instructions of the Court in this case, in the use and enjoyment of his property, is unknown to the law, nor are we aware of any principle of law or justice, upon which the doctrines here announced can be sustained.

The general principles of law in reference to the flow of water under the circumstances now under consideration are, that a man may reasonably use his land with a due regard for the rights of others; that he is not required to abandon it to stagnation or sterility, and that he is not only entitled to have the surface water descending upon his premises flow down upon his inferior neighbor, but is equally bound to submit to such flow of water from the natural water shed above him. (*Adams* v. *Harrison,* 4 La. Ann. 168; *Martin* v. *Jett,* 12 La. 503; *Overton* v. *Sawyer,* 1 Jones Law, N. C. 309; *Laumier* v. *Francis,* 23 Mo. 184; *Earle* v. *De Harte,* 1 Beasley, N. J. 286; *Gibson* v. *Puchta,* 33 Cal. 316; *Campbell* v. *B. R. and A. Water and Mining Company,* 35 *Id.* 679; *Rockwood* v. *Wilson,* 11 Cush. 226; *Chinn* v. *Southwick,* 12 Me. 238; *Greely* v. *Maine Central R. R. Co.* 53 Me. 200; *City of Bangor* v. *Lansil,* 51 Me. 525.)

In *Goodale* v. *Tuttle* (29 N. Y. 466), the Court held that "one is not obliged to excavate ditches or construct sewers on his own land, for the purpose of draining the low or marshy land of an adjoining proprietor." (*Barring* v. *Commonwealth,* 2 Duvall, Ky. 96)

*Second*—The instructions themselves are hopelessly irreconcilable and contradictory. The rule is fundamental and well settled that where the instructions of the Court to the jury upon the material point in the case are contradictory and inconsistent, the judgment must be reversed. The jury are not the judges of the law. "It is the duty of the Court to instruct the jury as to the law, and it is the duty of the jury to follow the law as laid down by the Court." (*State* v. *Wright,* 53 Me. 329.)

It is not for the jury to determine what portion of the instructions of the Court are correct and what incorrect.

They are all alike of equal binding force, and entitled to the same respect at the hands of the jury. It necessarily follows, therefore, that where the instructions upon the material points in the case are contradictory and inconsistent, the judgment must, for this reason, be set aside. (*Clark* v. *McElroy*, 11 Cal. 161; *People* v. *Campbell*, 30 Cal. 316; *Yonge* v. *Pacific M. S. S. Co.* 1 Cal. 354; *Weber* v. *Kingsland*, Bosw. 446.)

*Daniel Rogers* and *James R. Booth*, for Respondent.

The authorities cited by counsel for appellants have no application to this case. The maxim, "*sic utere tuo ut alienum non laedas*" is of universal application. The case of *Cahart et al.* v. *The Auburn Gas Light Co.* (22 Barb. 297) is an illustration of the application of the rule, and in the principal features of that case, both in point of law and fact, there is a strong resemblance to this present case, and we respectfully invoke the attention of the Court to the whole of that case, and to the opinion of the Court, as replete with learning and law, and aptly illustrative of the rule. "The maxim of the law is *aqua currit et debet currere ut currere solebat.*" ..

CROCKETT, J., delivered the opinion of the Court:

The plaintiff owns a house and lot situate on Clay street, in the City of San Francisco, upon a declivity, and the defendant is the owner of the next adjoining lot above that of the plaintiff; whilst still higher up the hill, and adjoining the defendant's premises, is a lot occupied by Chinamen and others. The action is to recover damages for an alleged nuisance, resulting, as averred in the complaint, from the defective drainage of the defendant's lot, and from the leakage and overflowing of his privy vault and cesspool, whereby foul and offensive water flows upon the premises of the plaintiff, percolates through his walls, and has injured his building. On the trial there was evidence tending to show that a considerable portion of the damage to the plaintiff's premises may have been and probably was caused by foul

and offensive water flowing from a Chinese hospital and cigar factory situate immediately contiguous to the defendant's lot, and higher up the hill, and which, escaping across the defendant's lot, found its way to the premises of the plaintiff, which are still further down the declivity. Under this state of facts it became necessary for the Court, in its charge to the jury, to define to what extent, if at all, the defendant was responsible for the damage to the plaintiff caused by the flow of the offensive water from the hospital and cigar factory across the premises of the defendant, and into and upon the premises of the plaintiff. In performing this duty the Court charged the jury, amongst other matters, that if "offensive and deleterious matter was cast on defendants' land, whether by their own act or that of others, and by defendant allowed to remain, so that it afterward, through the falling rains and flowing waters caused thereby, became cast on plaintiff's land, without his fault or negligence, the defendants were responsible for the damage caused thereby, as much so as though they had by their own acts taken such matter and cast it directly on the premises of the plaintiff." And again, that where real property is situate on a declivity, "he who has the property above that of another, if injured by some third person above him, by water being cast on his lot impregnated with effluvia and offensive material, and omits to take needed steps to prevent the same from being thereafter cast upon the premises of the property holder below, is responsible for the consequences; for his first duty is to himself to have the injury redressed which he has suffered, and, if possible, prevent its occurrence; and his direct and immediate duty then follows, to take the needed steps to prevent injury arising therefrom to the property owner below him." The defendants requested the Court to charge the jury that if the damage to the plaintiff was produced "by the natural flow of water from lands lying above the lot of the defendant, and that the defendant contributed in no respect to the flow of such water upon the plaintiff's lot," they should find for the defendant. This instruction was refused as asked, but was given with the following qualification added by the Court, to wit: "In connection with

this instruction you will bear in mind what I have already said to you, that it is necessary for the defendants to prevent the passage of the offensive matter flowing from the land of others across their land on to that of plaintiff." The same proposition was substantially repeated several times in other portions of the charge, and yet in another portion of it the jury is instructed that if "waters falling in the natural way by rainfall above the premises of the defendants, and cast upon the ground on the premises above the defendants, and there received deleterious matter, and in their natural course crossed the premises of defendants, and afterwards lodged upon the premises of the plaintiff, so charged, the defendants are in no way responsible therefor; they are only responsible for such reasonable and proper use of their own premises as will preclude injury to adjacent property holders below." The proposition embraced in this portion of the charge appears to be directly repugnant to that first quoted. We can conceive of no reasonable construction upon which they can be reconciled. If the defendants are not responsible for a damage caused to the plaintiff by water falling in the natural way by rainfall on the premises above those of the defendant, and there becoming impregnated with deleterious matter, and in its natural course crossing the defendant's premises, and flowing on to the plaintiff's lot, we do not ·comprehend how it could be "necessary for the defendants to prevent the passage of offensive matter flowing from the land of others across their land on to that of plaintiff." The two propositions are wholly repugnant, and cannot stand together; and for this reason, if there were no other error in the record, the judgment must be reversed. Where the instructions on a material point are contradictory, it is impossible for the jury to decide which should prevail, and it is equally impossible, after the verdict, to know that the jury was not influenced by that instruction which was erroneous, as the one or the other must necessarily be, where the two are repugnant. (*Clark* v. *McElvy*, 11 Cal. 161; *Yonge* v. *Pacific M. S. S. Co.* 1 *Id.* 354.)

CAL. REP. XXXIX.—73.

But the proposition that it was "necessary for the defendants to prevent the passage of offensive matter flowing from the land of others across their land on to that of the plaintiff," in order to escape responsibility to the plaintiff for the damage which resulted therefrom, is not tenable. The rule founded on the maxim "*Sic utere tuo ut alienum non laedas*" has never been carried so far. If the defendant had no control over the property lying on the declivity above his lot, nor over the persons who occupied it, and if, without any fault of his, offensive water thrown upon the upper lot flowed naturally across his premises on to the lot of the plaintiff, we can perceive no reason, founded in law or justice, why he should be amenable to the plaintiff for the damage which ensued. The defendant may not have deemed his own lot of sufficient value to justify the expense and trouble of a lawsuit to abate the nuisance, and prevent its recurrence in the future ; or he may not have had the means to prosecute the necessary legal proceedings. Must he be held, at his peril, to the performance of an act, at his own expense, for the protection of the plaintiff, which he was unwilling or unable to perform for his own protection? If it was incumbent on him to prevent the offensive matter from flowing across his lot from the lot above it, in order to shield the plaintiff from damage, no reason is perceived why it will not equally be his duty to indemnify the plaintiff against loss, if any should ensue, from the careless or wilful burning by another of the Chinese hospital or cigar factory on the lot above the defendants. If the fire should consume the defendant's house, and sweeping across his lot attack the plaintiff's house, we apprehend no one would claim that the defendant should make good the plaintiff's loss, arising from no act of the defendant, nor any neglect of his. For the same reason he is not responsible to the plaintiff for damages caused by offensive water flowing across his lot from the lot above it, without any act upon his part causing it to flow there. He is not bound to expend his money, time and labor in abating a nuisance not caused or promoted by him, but by others, over whom he has no control. If the rule were otherwise, the result might be that the defend-

ant's lot would not be of sufficient value to justify the expense of abating the nuisance caused by another, and he would be bound, at his peril, and against his will, to expend his time and money in abating the nuisance, not for his own benefit, but solely for the benefit of the plaintiff. The maxim we have quoted has no application to such a proposition, and the foregoing views of the law appear to us to be so consonant with reason and justice that we deem it useless to cite authorities in support of them. But we are not to be understood as deciding that the defendant is not responsible for any damage to the plaintiff, either caused, promoted or increased by any act of his, or by any negligence on his part to provide proper drainage for carrying off offensive water or other matter from his own lot, except such as may flow across it from lots above it in the manner already indicated.

Judgment reversed and a new trial ordered.